UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF | ) | |
| WILLIAM J. BEELEK, JR., et al. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV2068 CDP |
| | ) | |
| FARMINGTON MISSOURI | ) | |
| HOSPITAL CO., LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

William Beelek, Jr. died under unknown circumstances after he had been

examined and released from the Farmington Missouri Hospital to the St. Francois

County Jail.  Beelek's children and estate bring this case against Farmington

Missouri Hospital Co., the St. Francois County Sheriff's department, the St.

Francois County Jail, St. Francois County, and various individuals alleging that the

defendants were responsible for Beelek's death.  Defendant Farmington Missouri

Hospital Co., LLC seeks dismissal of plaintiffs' First, Second, and Fourth claims.

The hospital argues that plaintiffs' First and Second Claims fail to state a

claim under the Emergency Medical Treatment and Active Labor Act (EMTALA),

42 U.S.C. § 1395dd and 42 U.S.C. § 1983.  Specifically, it claims that plaintiffs

have not alleged that it disparately screened or treated Beelek, that the hospital was

a state actor, or that the hospital's policies were unconstitutional. It moves to dismiss plaintiffs' Fourth Claim because plaintiff failed to file an expert affidavit within the time required by Mo. Rev. Stat. § 538.22.

I will deny the motion to dismiss because plaintiffs have sufficiently alleged that the hospital screened Beelek differently than it screened non-prisoner patients, that the hospital is a state actor, and that the hospital had unlawful policies and training procedures. I will not dismiss the complaint for failure to comply with the expert affidavit requirement of Mo. Rev. Stat. § 538.22.

## Background

The facts set out here are those alleged in the Second Amended Complaint. William Beelek, Jr. was arrested and taken to the St. Francois County Jail on March 11, 2009. While he was in jail, he sustained injuries to his face and head. He was taken to Farmington Missouri Hospital on March 15, 2009.

The hospital had contracted with St. Francois County and the St. Francois County Sheriff's Office to provide medical care to inmates detained at the St. Francois County Jail. Specifically, the complaint states that the hospital "was engaged in the business, for profit, o[f] providing medical and psychological services to detainees and inmates of the St. Francois County Jail, including initial and continuing health risk evaluations, and specifically contracted with St.

Francois County and/or the St. Francois County Sheriff to provide such services."

When he was arrived at the hospital, Beelek was suffering from a life-threatening medical condition. He exhibited facial bruising, suffered seizures, and experienced symptoms of withdrawal from Ativan. Beelek's sister told the hospital of Beelek's medical history and the prescriptions that he had been taking, but the hospital ignored her. Plaintiffs allege that the hospital failed to screen or treat Beelek properly because he was an inmate at the jail. Beelek was returned to the St. Francois County Jail, and was found dead in his cell some time later – between March 15, 2009 and March 17, 2009.

The coroner performed an autopsy of Beelek, but failed to determine the cause of Beelek's death. The report indicated that Beelek had suffered facial trauma, but no "associated intra-cranial trauma" and that there was a "possibility of a suffocation or smothering event," but that there was no positive evidence indicating that Beelek had been suffocated or smothered. Beelek's blood tests indicated that he had not taken drugs of any kind, including any prescribed medication, after he was admitted to the St. Francois County Jail.

**Analysis**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[P]leadings under

the Federal Rules of Civil Procedure are designed to give the opposing party fair

notice of the claim asserted." *Shelter Mut. Ins. Co. v. Public Water Supply Dist.*

*No. 7 of Jefferson County, Mo.*, 747 F.2d 1195, 1197 (8th Cir. 1984). "To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129

S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.*

**1.      First Claim - Emergency Medical Treatment and Active Labor Act
         (EMTALA), 42 U.S.C. § 1395dd**

The hospital argues that plaintiffs have failed to state a claim under 42

U.S.C. § 1395dd. First, the hospital argues that plaintiffs have failed to allege that

the hospital screened Beelek differently than it screened other patients as required

by subsection (a) of 42 U.S.C. § 1395dd. Under subsection (a) of EMTALA

patients are entitled "not to correct or non-negligent treatment in all circumstances,

but to be treated as other similarly situated patients are treated, within the

hospital's capabilities." *Summers v. Baptist Medical Center Arkadelphia*, 91 F.3d

1132, 1138 (8th Cir. 1996); *see also Hunt ex rel. Hunt v. Lincoln County Memorial*

*Hosp.*, 317 F.3d 891, 894 (8th Cir. 2003); 42 U.S.C. § 1395dd(a). "EMTALA is not a federal malpractice statute and it does not set a national emergency health care standard; claims of misdiagnosis or inadequate treatment are left to the state malpractice arena." *Summers*, 91 F.3d at 1137.

Here, plaintiffs' allegations are sufficient to withstand a motion to dismiss. The complaint states that the hospital did not, but should have, screened Beelek for prescription drugs, inquired about the medications that Beelek had been taking, observed him for twenty-four hours to monitor his head injury, and prescribed him medication for his withdrawal from Ativan. Plaintiffs allege that non-prisoners were treated differently, but argue that they need discovery to prove this allegation. Given the mystery surrounding the cause of Beelek's death and the fact that plaintiffs had not had the opportunity to obtain discovery from the hospital at the time the complaint was filed, these allegations are sufficient to notify the hospital of the nature of plaintiffs' claim and to factually support their claim that Beelek received disparate, as well as inadequate, treatment.

The hospital also argues that plaintiffs have not sufficiently stated a claim under subsection (b) of § 1395dd because they failed to allege that the hospital knew of Beelek's condition. Under subsection (b) of § 1395dd, if a patient has an emergency medical condition, the hospital must provide "such treatment as may be

required to stabilize the medical condition" or coordinate a "transfer of the individual to another medical facility." 42 U.S.C.A. § 1395dd (b)(1). In order for plaintiff to prevail on a claim that the hospital failed to properly stabilize or transfer the patient, plaintiff must show that the hospital actually knew that the patient suffered from an emergency medical condition.[1] *Baber v. Hospital Corp. of America*, 977 F.2d 872, 883 (4th Cir. 1992) ("EMTALA's transfer requirements do not apply unless the hospital actually determines that the patient suffers from an emergency medical condition."); *see also Heimlicher v. Steele*, 615 F. Supp. 2d 884, 901 (N.D. Iowa 2009).

The complaint sufficiently alleges that the hospital knew of Beelek's emergency medical condition. The complaint states that the hospital was aware that Beelek had visible facial bruising, that he was withdrawing from a prescription drug, that he was suffering from seizures, and that all of these conditions were life-threatening. The complaint also alleges that Beelek's sister notified the hospital of

---

[1]The statute defines the term "emergency medical condition" as: "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in:"

   (i) placing the health of the individual . . . in serious jeopardy,

   (ii) serious impairment to bodily functions, or

   (iii) serious dysfunction of any bodily organ or part;

42 U.S.C. § 1395dd (2011).

Beelek's medical history and the fact that he had been taking Ativan. These allegations of Beelek's obvious and serious physical distress plausibly support plaintiffs claim that the hospital knew that Beelek suffered from an emergency medical condition sufficient to support a claim under § 1395dd(b). As a result, I will deny the hospital's motion to dismiss plaintiffs' First Claim.

**2.    Second Claim - 42 U.S.C. § 1983**

The hospital argues that plaintiffs have failed to state a claim under 42 U.S.C. §1983 on two grounds. First, the hospital argues that plaintiffs' § 1983 claim fails because plaintiffs have not alleged that the hospital is a state actor. To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C.A. §1983. A private corporation may be liable under § 1983 when it acts under color of state law. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). Although there are many tests to determine whether a private corporation acts under color of state law, the ultimate issue is whether the private corporation's actions are "fairly attributable to the state." *See Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)); *Brentwood*

*Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 n.2, 295-96 (2001) (noting that the under-color-of-law requirement of 42 U.S.C. § 1983 and the state-action requirement of the Fourteenth Amendment are equivalent and listing the multitude of tests used to determine whether a private party is a state actor).

Here the plaintiffs have sufficiently alleged that the hospital was performing a public function when Beelek was brought to it. *See Brentwood Academy*, 531 U.S. at 296 (characterizing the color of state law test applied in *West v. Atkins* as the public function test); *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 826 (7th Cir. 2009). "It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." *West*, 487 U.S. at 55-56. When making this determination, courts should consider the "degree to which the work of the private medical provider is controlled or influenced by the state," the nature of "the contractual relationship between the state and the medical care provider," and the degree to which the private entity replaces the State's provision of medical care to prisoners, as opposed to simply assisting the State. *See West*, 487 U.S. at 50-58; *Rodriguez*, 577 F.3d at 825-29. The fact that the healthcare provider does not exclusively provide medical services to a prison does not make it "less a state actor than if [it]

performed those duties as a full-time, permanent member of the state prison

medical staff." *Id.*

In *Rodriguez v. Plymouth Ambulance Service*, the Seventh Circuit found a

hospital to be a state actor when it treated a prisoner. The prisoner became ill and

was taken to the hospital, which had a contract with the prison. *Rodriguez*, 577

F.3d at 819-20. While hospitalized, the inmate contracted an infection from his IV

and brought suit against the private hospital under § 1983 alleging that it had

violated his rights under the Eighth Amendment. *Id.* The Seventh Circuit relied on

*West v. Atkins* in applying the public function test to determine whether the

hospital was a state actor. *Id.* at 824. The court considered the "degree to which

the work of the private medical provider [was] controlled or influenced by the

state," the nature of "the contractual relationship between the state and the medical

care provider," and the degree to which the private entity replaced the state's

provision of medical care to prisoners, as opposed to simply assisting the state.

*Rodriguez*, 577 F.3d at 825-29. The court found that the plaintiff alleged sufficient

facts to support his claim that the private hospital was a state actor when he

claimed that the hospital had an ongoing relationship with the prison and the

hospital was providing medical care in satisfaction of the prison's duty to provide

medical care.[2]  *Rodriguez*, 577 F.3d at 831-32.

Plaintiffs here have sufficiently alleged that the hospital acted under the color of state law when it treated Beelek.  The complaint alleges that the St. Francois County Jail had a duty to provide medical care to its inmates, the hospital voluntary contracted with the State to provide substantially all necessary medical care to the inmates at the St. Francois County Jail, that Beelek was transferred from the jail to the hospital under this contract, and, once Beelek arrived, the hospital took responsibility for his overall medical care.  Based on these facts, plaintiffs have alleged sufficient facts to support its claim that the hospital acted under color of law when it treated Beelek.

The hospital attempts to avoid this conclusion by distinguishing *West v. Atkins*.  The hospital argues that the analysis in *West* should not apply because the medical services in this case did not occur in the jail.  This basis for distinction, however, conflicts with the Supreme Court's direction to consider whether a private corporation is a state actor based on the particular circumstances of the case and has been rejected by other courts.  *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722 (1961) ("Only by sifting facts and weighing circumstances can

_____

[2] Although the court found the hospital to be a state actor, it ultimately found that the hospital was not liable under § 1983 because the plaintiff did not allege that the hospital's policies or insufficient training led to the hospital's mistreatment of the plaintiff.

the nonobvious involvement of the State in private conduct be attributed its true

significance."); *see also Rodriguez*, 577 F.3d at 827 (stating that the place of the

medical treatment is not dispositive, but only a factor in determining the degree to

which the private party is controlled or influenced by the state); *Sanchez v.*

*Pereira-Castillo*, 590 F.3d 31, 51-52 (1st Cir. 2009) (holding that a doctor who

performed an  intrusive search of a prisoner at an off-site emergency room was a

state actor); *Conner v. Donnelly*, 42 F.3d 220, 225-26 (4th Cir.1994) (holding that

a private physician that treated an inmate acted under color of law even when the

treatment occurred outside of the prison in the absence of a contract with the state

because the physician voluntarily assumed the state's obligation to provide medical

care to inmate); *Moore v. Wyoming Medical Center*, 825 F.Supp. 1531, 1540-41

(D.Wyo. 1993) (holding that a private hospital that treated a prison inmate was a

state actor).

The hospital's second argument for dismissing the § 1983 claim is that the

complaint does not sufficiently allege that the hospital's policies or customs led to

the hospital's mistreatment of Beelek.  A private corporation cannot be held liable

under § 1983 for its employees' deprivation of another's rights.  *Smith v. Insley's*

*Inc.*, 499 F.3d 875, 880 (8th Cir. 2007).  However, a private corporation may be

liable under § 1983 if the injury alleged is the result of the corporation's policy or

practice or if the corporation knew of its employees' misconduct and failed to take

steps to end the misconduct.  *Id.*

The complaint specifically alleges that the hospital's policies led to a

violation of Beelek's Eighth and Fourteenth Amendment rights.  The complaint

alleges that the hospital:

      a.     Had no policy or procedure in effect to monitor,
supervise, or observe detainees;

      b.     Had as a matter of standard operating procedure ,
employed both directly and by contract, unqualified poorly,
improperly trained personnel to provide medical and psychological
care in diagnosing and treating ailments of detainees;

      c.     Had inadequate facilities and policies in effect to house
detainees who were or posed medical, psychological, and suicide
risks.

The complaint also claims that Beelek's death was caused by these policies and by

the hospital's "inadequate supervision and poor medical treatment and improper

training of staff."  These allegations are sufficient to support plaintiffs' claim that

the hospital's policies and training regarding the treatment of inmates led to a

violation of Beelek's constitutional rights.

**3.    Fourth Claim - Negligence**

The hospital seeks to dismiss plaintiffs' Fourth Claim for negligence

because plaintiffs failed to file an expert affidavit within ninety days of filing suit.

Instead, they filed the necessary affidavit along with the Second Amended

Complaint, 134 days after the initial filing. Under Missouri law, a plaintiff

asserting a personal injury claim against a health care provider must file an

affidavit stating that they have obtained the opinion of a qualified medical expert

and that the expert's opinion is that the health care provider's negligence caused

plaintiff's injuries. Mo. Rev. Stat. § 538.225(1) (West 2011). The statute requires

that the "affidavit shall be filed no later than ninety days after the filing of the

petition unless the court, for good cause shown, orders that such time be extended

for a period of time not to exceed an additional ninety days." Mo. Rev. Stat. §

538.225(5). "If the plaintiff or his attorney fails to file such affidavit the court

shall, upon motion of any party, dismiss the action against such moving party

without prejudice." Mo. Rev. Stat. § 538.225(6) (West 2011).

Even assuming that this rule applies in this case,[3] plaintiffs had good cause

_____

[3]The court has supplemental jurisdiction over the negligence claim under 28 U.S.C. § 1367. Courts considering a state law claim based on supplemental jurisdiction apply federal procedural law and state substantive law. *See Witzman v. Gross*, 148 F.3d 988, 990 (8th Cir. 1998) ("When considering Witzmans supplemental state-law claims, we are bound by Minnesota law."); *Perry v. Blum*, 629 F.3d 1, 8 (1st Cir. 2010) ("Where, as here, a federal court proceeds under supplemental jurisdiction, it is obliged to apply federal procedural law and state substantive law."); *Smith v. Planned Parenthood of St. Louis Region*, 225 F.R.D. 233, 238-39 (E.D.Mo. 2004). I believe that the mandatory dismissal provision of § 538.225 is procedural, and so does not apply in this federal court. *See Mahoney v. Doerhoff Surgical Services, Inc.*, 807 S.W.2d 503, 508 (Mo. 1991) ("In response to the constitutional arguments against the statute, it is well to understand that § 538.225 enacts a *procedure* in suits for personal injury or death damages caused by negligent health care providers. ") (italics added); *White v. Tariq*, 299 S.W.3d 1, 4 (Mo. Ct. App. 2009) ("The mandatory dismissal provision added to Section 538.225

for an extension of the 90-day deadline and they filed their affidavit within the

extended 180-day time period.  Plaintiffs had to file their claim against the hospital

without direct knowledge of the events leading up to Beelek's death and without a

coroner's report stating a definitive cause of death.  This situation necessarily

impeded plaintiffs' ability to procure an expert opinion supporting their claim for

negligence and, as a result, plaintiffs had good cause for an extension of the

deadline under § 538.225.  With the extension, plaintiffs had until April 30, 2011

to file their expert affidavit.  Plaintiffs met that deadline by filing their expert

affidavit on March 14, 2011.  In addition, I hospital has not been prejudiced at all

by the delay, and dismissing the claim without prejudice would only increase the

expense and delay of resolving the case, as I would undoubtedly allow plaintiffs to

refile the claim.   As a result, I find that plaintiffs have satisfied their obligations

under § 538.225 and it is not appropriate to dismiss plaintiffs' negligence claim on

this basis.

---

does not affect the rights or duties giving rise to Plaintiffs' malpractice action, but rather sets
forth the pre-trial procedure for cases where the plaintiff fails to timely file a sufficient health
care affidavit.").  I recognize that other trial courts may disagree with this conclusion. *See Smith
v. Planned Parenthood of St. Louis Region*, 225 F.R.D. 233, 238-39 (E.D.Mo. 2004).

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [#39] is

DENIED.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 8th day of September, 2011.