UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ESTATE OF | ) |
| WILLIAM J. BEELEK, JR., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:10CV2068 CDP |
| | ) |
| FARMINGTON MISSOURI | ) |
| HOSPITAL CO., LLC, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Plaintiffs Daniel Beelek – individually and on behalf of the estate of William J. Beelek, Jr. – and William J. Beelek, III filed this action against various Farmington Missouri Hospital defendants and St. Francois County, Missouri defendants, asserting claims related to the death of William J. Beelek, Jr. while in the custody of St. Francois County Jail. Only the claims against the St. Francois County defendants remain, including a federal § 1983 claim and state-law wrongful death and negligence claims.[1] Defendants now move for summary judgment on plaintiffs' second amended complaint. Because I conclude that

---

[1] Plaintiffs' second amended complaint is unclear as to which claims actually comprise which count, due to inconsistencies between the language used and the Roman Numerals used throughout the complaint. For clarity of the record, I will consider plaintiffs' claim for relief under 42 U.S.C. § 1395dd, labeled as "III" in the Complaint, as Count I. That count has already been dismissed through settlement. Count II is plaintiffs' § 1983 claim against the St. Francois County defendants, labeled as "IV" in the complaint. Counts III and IV are plaintiffs' state-law claims, labeled as "V" and "VI" in the complaint.

plaintiffs have not presented sufficient evidence to support any theory of § 1983 liability against the defendants, I will grant the defendants' motion for summary judgment.

**Background**

Plaintiffs Daniel J. Beelek and William J. Beelek, III, are the surviving children of William J. Beelek, Jr., who died on March 17, 2009, at the St. Francois County Jail. Daniel J. Beelek is also the administrator of the Estate of William J. Beelek, Jr. Defendant Sheriff Dan Bullock is the Sheriff of St. Francois County, and Defendant Sergeant Dennis Smith is the supervisor of the St. Francois County Jail.[2] No other officers or employees of St. Francois County were named as defendants in this case.

William J. Beelek, Jr. was a pretrial detainee in the custody of the St. Francois County Jail in March of 2009. On March 14, 2009, Beelek told Officer Rayoum that his side was numb and he thought he was having a stroke. The officer reported that Beelek did not appear to be having any symptoms of a stroke, and Beelek kicked the door every few minutes. On March 15, 2009, Officer Jones was serving lunch trays, and the two other individuals in Beelek's cell reported that Beelek had been attempting to kill himself by cutting his neck with a piece of

---

[2] Plaintiffs also brought claims against several Farmington, Missouri hospital defendants, but plaintiffs have settled their claims with those defendants. This court approved that settlement on November 6, 2012.

metal and strangling himself with a piece of cloth. Officer Jones escorted Beelek to an isolated, padded cell and instructed him to remove his clothing for safety.

On March 16, 2009, Officer Evans and Nurse Rodney Harris went to Beelek's cell to give him his medication and breakfast, and Beelek tried to step out of the cell. When he would not return to the cell, Officer Evans sprayed him with oleoresin capsicum, or pepper spray, and secured the door. Officer Pettus accompanied Officer Evans in getting Beelek to the shower to rinse off the spray approximately 50 minutes later. When they opened the cell to retrieve Beelek, they found him lying on the floor with small piles of feces in the cell. Beelek did not respond to any verbal commands, so they placed an ammonia stick under his nose, after which he tried to hold his breath and hide his response. They got him out of the cell and into the shower room, when Beelek attempted to place feces that had been on his leg onto Officer Pettus. In attempting to block Beelek's hand, Officer Pettus struck Beelek on the right side of his face. The rest of the shower was without incident, and Beelek was taken back to his cell in a wheelchair.

Later that day, Beelek appeared to be unresponsive in his cell. Nurse Harris took his vital signs and found everything to be normal, and he concluded that Beelek was "playing possum." The following day, at approximately 5:00 a.m., Beelek seemed to be asleep in his cell, but he did not respond to questions, noise or touch. He was taken to the hospital for examination, and the hospital reported that

he was fine and fit for confinement.  He returned to the jail around 7:30 that morning.  Beelek was placed on suicide prevention watch, and he was placed back into the cell naked but with a blanket that was designed to minimize its potential use in a suicide.  Nurse Harris brought medication to Beelek around 9:06 a.m., and he was awake and responsive.  At approximately 10:40 a.m., Beelek was again found to be unresponsive when Nurse Harris attempted to bring him his medication, and Nurse Harris pulled the blanket out of Beelek's mouth.  Officer Pettus observed a bluish color around Beelek's mouth and in his hands and feet.  Beelek had no detectable pulse or respiration, so Nurse Harris began administering CPR and advised jail staff to call an ambulance.  Emergency medical personnel arrived and attempted to revive him, but their efforts were unsuccessful.

An autopsy was performed on August 17, 2009.  The pathologist determined that the cause and manner of death were undetermined.  As to specific findings, he noted bruising around the right eye, but found that it was not associated with any intracranial trauma.  He also noted that because Beelek was found unresponsive with a blanket over his head and shoulders, there is a possibility that he died from a suffocation or smothering event, but these occurrences often leave no specific autopsy findings.

Defendants now seek summary judgment on the basis that there is a lack of evidence to prove their liability as supervisors and a governmental entity as to

plaintiffs' claim under 42 U.S.C. § 1983. They also argue that there is a lack of evidence of causation as to all remaining claims.

## Discussion

In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to the nonmoving party, here the plaintiffs. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e).

1. <u>§ 1983 Claim Against St. Francois County and Bullock and Smith in their Official Capacities</u>

Plaintiffs' complaint raises claims against St. Francois County, as well as Sheriff Daniel Bullock and Sergeant Dennis Smith in their individual and official capacities. Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official – here, St. Francois County. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Thus, the analysis of plaintiffs' § 1983 claim against defendants Bullock and Smith in their official capacities is the same as the analysis of the § 1983 claim against St. Francois County.

"Municipal liability under section 1983 is premised on the existence of two prerequisites: (1) a policy, practice, or custom must be attributable to the City through actual or constructive knowledge; and (2) the policy, practice, or custom must directly cause constitutional injury." *Gatlin ex rel. Estate of Gatlin v. Green*, 362 F.3d 1089, 1094 (8th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Based on plaintiffs' complaint, they appear to allege two theories of municipal liability: (1) the County had a policy or custom of failing to act upon prior allegations of unconstitutional conduct; and (2) the County failed to properly hire, train, and supervise the jail officers, resulting in deliberate indifference toward Beelek's constitutional rights.

In order to hold a municipality liable based on a custom or policy, the prior incidents must constitute a "pattern of unconstitutional conduct that is so 'persistent and widespread' as to have the effect and force of law." *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996) (quoting *Monell*, 436 U.S. at 691). To establish municipal liability on the basis of a governmental custom or policy and the failure to act on prior complaints, a plaintiff must show:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe A v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 646 (8th Cir. 1990).

In this case, the misconduct alleged by plaintiff appears to be a failure to appropriately treat Beelek's unknown health condition or adequately monitor him as a potentially suicidal inmate. The plaintiffs do not present any evidence of a pattern of this type of conduct. The only other incident cited by the plaintiffs occurred in 1963, as described by the Missouri Supreme Court in *Missouri v. Tettamble*, 394 S.W.2d 375 (Mo. 1965). That case involved the beating of an inmate at the St. Francois County Jail by other inmates, which ruptured his stomach and resulted in his death. *Id.* at 377-78. However, beyond the fact that both that case and the current case involved an inmate dying at the St. Francois County Jail, there are no procedural or legal similarities between the two cases sufficient to conclude that there may be a pattern of unconstitutional misconduct known by these defendants.

Plaintiffs also argue that because there is no evidence that any members of the jail staff were disciplined for failing to follow protocol in this case, a jury can

infer that a custom existed. Although plaintiffs have not specified what procedures were allegedly violated in this case, any such remedial measures may not form the basis for inferring a pattern of *prior* conduct necessary to demonstrate a custom or policy. Because plaintiffs provide no other evidence from which I may find that a pattern of unconstitutional misconduct occurred, there is no basis on which to find deliberate indifference by the defendants or causation. Therefore, this theory of municipal liability fails as a matter of law.

As a second, alternative basis for municipal liability against the County, plaintiffs assert that the County failed to properly hire, train, and supervise the jail officers. In order to establish a case for § 1983 municipal liability for deficient hiring and training of police officers, plaintiffs must show:

> (1) the city's hiring and training practices are inadequate;
>
> (2) the city was deliberately indifferent to the rights of others in adopting them, such that the "failure to train reflects a deliberate or conscious choice by a municipality"; and
>
> (3) an alleged deficiency in the city's hiring or training procedures actually caused the plaintiff's injury.

*Andrews*, 98 F.3d at 1076 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

Specifically, plaintiffs argue in their complaint that defendants employed "unqualified, poorly, improperly trained personnel to provide medical and psychological care in diagnosing and treating ailments of detainees" and that

defendants "[h]ad inadequate facilities and policies in effect to house detainees who were or posed medical, psychological, and suicide risks." (Doc. #32, at 13). However, beyond those bare allegations, plaintiffs do not present any evidence from which to conclude that the officers' training is inadequate. In fact, the only evidence provided by plaintiff regarding staff training is a letter written by defendant Smith, which states that the jail staff does receive annual training on suicide prevention. (Doc. #109, at 54). Therefore, plaintiffs do not present sufficient evidence to show that the city's hiring and training practices are inadequate.

Furthermore, even if the training was inadequate, plaintiffs do not provide sufficient evidence that defendants were deliberately indifferent to the rights of others in adopting their training policies. To establish deliberate indifference in this context, plaintiffs must prove that the County "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (internal quotation marks and citation omitted). Plaintiffs first argue that defendants demonstrated deliberate indifference by failing to take Beelek's suicide attempt seriously. Although plaintiffs cite the letter from defendant Smith stating that the attempt was not taken seriously because Beelek was in a cell with others and only made superficial scratches on his neck (Doc. #109, at 53), the jail staff still moved him to an isolated, padded cell in

response to the attempt and routinely checked on him through personal cell checks and monitoring through the cell's camera. Further, even if the staff did not take the suicide attempt seriously enough, this does not constitute deliberate indifference by the County because it does not demonstrate that the County chose to deliberately adopt inadequate procedures for suicidal inmates, which would be necessary for liability under a failure to train theory.

Plaintiffs further argue that defendants failed to train officials in specific areas where there is an obvious need for training, namely, the symptoms and treatment of seizures and the procedures for monitoring potentially suicidal inmates. They argue that Beelek was denied a suicide gown and placed naked in a cell, and that the jail staff failed to follow protocol as to when he should have been seen by a mental health expert. Plaintiffs also argue that the jail staff failed to appropriately monitor Beelek's condition in the isolated cell, especially given that the camera in the cell only recorded when it sensed movement.[3]

Regarding the deliberate indifference allegations concerning seizures and Beelek's health condition, plaintiffs have not provided any evidence showing that jail officials were even aware of a potentially fatal health condition to which they

---

[3] The cell was apparently equipped with a video camera that continually provided live streaming of the occupant's activities. However, it only recorded what it was viewing when there was movement in the cell. Therefore, if the occupant was sleeping or otherwise still in the cell, it would not record the inmate's movements, but the jail staff member monitoring the inmate could still see what was happening in the cell at all times.

were deliberately indifferent. In fact, jail staff took him to the hospital, where he was deemed fit for confinement. The nurse continued to check on Beelek periodically and provided him with medication, and plaintiffs provide no evidence that these medical actions were done with deliberate indifference to a known medication condition. Therefore, this is not a proper basis for finding deliberate indifference on behalf of the defendants.

As to the allegations of deliberate indifference regarding Beelek's potentially suicidal state, plaintiffs point to the recommended clinical protocols that were used by the jail. (Doc. #109, at 22-23). Plaintiffs argue that these protocols were not sufficiently followed by the jail staff, particularly the protocol recommending that the inmate be evaluated by a mental health professional within 24 hours. Even if the protocols were not followed, this is not an adequate basis for a finding of deliberate indifference. At most, it would constitute failure to follow a County policy by an individual employee, rather than the municipality maintaining an inadequate policy as required for municipal liability. Therefore, this is not a sufficient basis on which a municipality may be found liable under § 1983.

Because I have concluded that the plaintiffs failed to provide sufficient evidence of inadequate training and deliberate indifference by the defendants, there is no basis to conclude that any such inadequacies caused – or even contributed to

– Beelek's death. Therefore, plaintiffs' claim of municipal liability under § 1983 fails as a matter of law, and defendants are entitled to summary judgment.

*2.      § 1983 Claim Against Bullock and Smith in their Individual Capacities*

Plaintiffs also raise a claim under § 1983 against defendants Bullock and Smith in their individual capacities. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Thus, a § 1983 claim cannot survive on a theory of respondeat superior liability. *See, e.g.*, *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). Based on the undisputed facts, Bullock and Smith's roles in this case were merely as supervisors, rather than participants in the relevant events. "To establish personal liability of . . . supervisory defendants, [a plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006). Plaintiffs have not set forth any facts, nor do they even argue or allege, that defendants Bullock and Smith had any personal involvement in, or even knew about, the events surrounding Beelek's death. Therefore, the claims against defendants Bullock and Smith in their individual capacities fail as a matter of law, and defendants are entitled to summary judgment.

3. *State-Law Wrongful Death and Negligence Claims*

Plaintiffs' remaining claims – raising various allegations of wrongful death and negligence – arise under state law and are before this court under the doctrine of supplemental jurisdiction. 28 U.S.C. § 1367. Because I have granted summary judgment to the defendants on the plaintiffs' federal claim, the only claim over which I have original jurisdiction, I decline to exercise jurisdiction over the remaining state-law claims and will therefore dismiss them without prejudice. 28 U.S.C. § 1367(c)(3).

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#107] is granted as to Count II of plaintiffs' second amended complaint.

**IT IS FURTHER ORDERED** that plaintiffs' state-law claims are dismissed without prejudice.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of April, 2013.